UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |  |  |
|---|---|---|---|
| MUREX, LLC, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | CIVIL ACTION NO. | |
| VS. | ) | | |
| | ) | 3:15-CV-3789-B | |
| GRC FUELS, INC., ET AL., | ) | | |
| | ) | | |
| Defendants. | ) | | |

MEMORANDUM OPINION AND ORDER

Before the Court is the Defendants GRC Fuels, Inc. ("GRC") and Gregory Schnabel ("Schnabel")'s Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(6) (doc. 34). For the reasons that follow, the Court concludes that the Defendants' Motion should be, and hereby is, **GRANTED** in part and **DENIED** in part.

I.  BACKGROUND[1]

This dispute arises out of a series of contracts in which the plaintiff, Murex LLC ("Murex"), purchased renewable fuel credits -- associated with batches of renewable fuel by Renewable Identification Numbers ("RINs") -- from the defendant GRC. Plaintiff's First Amended Complaint ("Am. Compl.") ¶ 1 (doc. 19). Murex asserts an array of fraud and assorted non-contractual causes

---

[1]The background facts are derived from Plaintiff's First Amended Complaint. (Doc. 19)

of action arising out of its purchase of these renewable fuel credits from GRC which were later deemed invalid by the Environmental Protection Agency (EPA).

In the Energy Policy Act of 2005, Congress required that a certain percentage of the fuel that petroleum refiners and importers introduced into the domestic gasoline market be renewable fuel. *See id.* ¶ 29. In passing the Energy Policy Act, Congress established a regulatory scheme that permitted producers of renewable fuel to generate renewable fuel credits, RINs. *Id.* In doing so, Congress set up a secondary market in which petroleum producers that do not themselves produce renewable fuel can purchase RINs from other producers and use the RINs to comply with the renewable volume obligations. *Id.* In 2010, Congress sought to better regulate the secondary RIN market and implemented the Moderated Transaction System ("EMTS"), through which fuel producers must electronically submit reports to the Environmental Protection Agency ("EPA") about their fuel and RIN generation. *Id.* ¶ 30. Under the EMTS, RINs are electronically generated by producers, pursuant to EPA regulations, and traded on the open market through EMTS. *Id.* When RINs are created, the producers assign the RINs "D Codes," which reflect the percentage reduction of greenhouse gas emissions for the underlying fuel. *Id.* ¶ 36. Purchasers of renewable fuel and RINs on the secondary market are able to commission "Certificates of Analysis" from the producer, prepared by independent laboratories. *Id.* ¶ 35.

The underlying renewable fuel and RINs at issue in this case originated from New Energy Fuels LLC ("NEF") and Chieftain Biofuels, LLC ("Chieftain"). *Id.* ¶¶ 62, 86. Dean Daniels, Richard Smith and Brenda Daniels (the "Felon Defendants") were officers and employees of both entities and

are defendants in this case.[2]  *Id.* ¶¶ 12, 40.  The Felon Defendants told the EPA that NEF and Chieftain were generating biofuel, and the EPA granted them the ability to generate RINs within EMTS and transfer those RINs to others.  *Id.* ¶ 40.  In reality, NEF was generating low quality "bunker fuel" and Chieftain was simply filtering oil and grease.  *Id.* ¶¶ 41-42.

In a July 2011 conversation, Schnabel, the president of GRC, informed Murex that GRC's business model was to (i) take possession of the RIN producers' biodiesel, including NEF biodiesel; (ii) separate the RINs from the biodiesel, and re-sell them into the secondary market; and then (iii) distribute the biodiesel to GRC's customers along the east coast.  *Id.* ¶ 54.  In 2011 and 2012, Schnabel later verbally repeated those representations, and confirmed them in writing, throughout GRC's business relationship with Murex.  *Id.* ¶¶ 55-56.  From August 2011 through December 2011, Murex purchased NEF-generated RINs from GRC.  *Id.* ¶ 62.

In or about October 2011, before Murex began purchasing Chieftain-generated RINs, Schnabel informed Murex that GRC was taking possession of Chieftain's biodiesel and re-selling it to GRC's customers along the east coast.  *Id.* ¶ 55.  In December 2011, Murex stopped buying NEF-generated RINs from GRC because GRC and NEF were unwilling to provide Murex with further documentation.  *Id.* ¶ 74.  In response, Schnabel recommended Murex replace NEF with Chieftain as its primary RIN producer, although Schnabel did not inform Murex that Chieftain was owned and operated by the same individuals that owned and operated NEF.  *Id.* ¶¶ 79-80.  GRC sold Murex Chieftain-generated RINs from October 2011 through March 2012.  *Id.* ¶ 86.

---

[2] The instant Motion to Dismiss does not affect Murex's claims against the Felon Defendants.

Between August 2011 and March 2012, all of approximately 52 RIN purchases were initially agreed to in a telephone conversation between Murex and Schnabel. *Id.* ¶¶ 62, 83. The substance of the conversations was later confirmed within twenty-four hours through RIN confirmations accompanied with terms and conditions, the underlying written contracts at issue (the "Purchase Agreements"). *Id.* ¶¶ 63, 84.

Several years later, in July 2015, the EPA issued a notice of violation stating that, from July 7, 2010 through February 29, 2012, all of the RINs generated by NEF and Chieftain -- approximately 15 million RINs in total -- have been determined to be invalid. *Id.* ¶ 46. As set forth in the Department of Justice press release attached to the complaint, the Felon Defendants' "complicated . . . scheme" defrauded both the EPA and the Internal Revenue Service ("IRS") with their certifications and other representations that the fuel they were producing was biodiesel. *Id.*, Exhibit E to the Am. Compl. at 1. The Felon Defendants each pled guilty to the charge that they falsely represented to the EPA and IRS that they were producing biodiesel. *See id.*, Exhibits A-C to the Am. Compl.

On November 6, 2015, Murex filed suit in the District Court of Dallas County, Texas 191st Judicial District (doc. 1-5). The defendants GRC and Schnabel removed the case to this court. (doc. 1). On January 15, 2016, after seeking leave of court, Murex filed its amended complaint (doc. 19). In its amended complaint, Murex asserts twelve causes of action against the Defendants, including ten claims against Defendants GRC and/or Schnabel (the "GRC Defendants"). On February 11, 2016, the GRC Defendants filed the instant Motion to Dismiss all claims asserted against them (doc. 34). Murex filed a timely response (doc. 44), to which the GRC Defendants served a timely reply (doc. 51). The Motion is now ripe for review.

## II. LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). If a plaintiff's complaint fails to state such a claim, Rule 12(b)(6) allows a defendant to file a motion to dismiss. FED. R. CIV. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). The Court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Rather, the Court's review is limited to the allegations in the complaint and to those documents attached to a defendant's Motion to Dismiss to the extent that those documents are referred to in the complaint and are central to the plaintiff's claims. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

To survive a motion to dismiss, a plaintiff "must plead facts sufficient to show that her claim has substantive plausibility," *Johnson v. City of Shelby*, 574 U.S. __, 135 S. Ct. 346, 347 (2014). That is, she must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 560). "Threadbare recitals of the elements of a cause

- 5 -

of action, supported by mere conclusory statements, do not suffice." *Id.* When well-pleaded facts

fail to meet this standard, "the complaint has alleged -- but it has not shown -- that the pleader is

entitled to relief." *Id.* at 679 (internal quotation marks and alterations omitted).

## III.  ANALYSIS

### A.  Murex's Claims are Not Barred by the Release and Waiver Provisions

The GRC Defendants first contend that Murex's claims are foreclosed by the unambiguous

terms of the Purchase Agreements.  GRC Defendants' Motion to Dismiss Pursuant to Federal Rule

12(b)(6) and Memorandum in Support ("Motion") at 10-13 (doc. 34) (citing Exhibit J to Am.

Complaint ("Exhibit J") (doc.14)).  Specifically, the GRC Defendants aver that § 14.1 (The Purchase

Agreements "set[] forth the entire agreement between the parties hereto and supersede[] and

replace[] all previous discussions, negotiations, and agreements.") and § 7.3 ("[E]ach party

relinquishes and releases all claims against the other for the prospective profits, incidental or

consequential damages, whether or not based upon . . . any other cause of action based upon defect

in the product or seller's title thereto.") "unequivocally foreclose[]" any claim Murex may have

against the GRC Defendants.[3]  Motion at 10 (citing Exhibit J).  In response, Murex contends that

sections 7.3 and 14.1 do not explicitly and unequivocally waive fraud claims or disclaim reliance on

_____

[3] In its Response, Murex questions whether the Purchase Agreements are enforceable because they were not signed by GRC.  The Purchase Agreements are signed by Murex, the party against whom the contract is sought to be enforced.  *Street v. Johnson*, 96 S.W.2d 427, 429 (Tex. Civ. App. -- Amarillo 1936, no writ).  Therefore, the contract is enforceable under Texas contract law.  *Id.*  Further, "a contract in writing signed by one party and . . . the terms thereof performed and the benefits thereof accepted, is in law the written contract of the parties and binding on both."  *Chavez v. Aber*, 122 F. Supp. 3d 581, 602 (W.D. Tex. 2015) (quoting *Rubin v. Polunsky*, 366 S.W.2d 234, 236 (Tex. Civ. App.--San Antonio 1963)).  Murex's contentions that the purchase agreements are unenforceable fail.

- 6 -

any representations.   Murex's Response to the GRC Defendants' Motion to Dismiss and Memorandum in Support ("Response") at 8 (doc. 44).

Under Texas contract law,[4] to determine if a contract precludes a fraudulent inducement claim, courts must as a threshold matter, determine whether the contract shows clear and unequivocal intent to disclaim reliance on representations. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 n.8 (Tex. 2011).  Assuming such intent is present, then courts are to consider the "totality of the circumstances" surrounding the contract's formation before enforcing the disclaimer.  *Id.*  In *Italian Cowboy Partners, Ltd.*, the Texas Supreme Court concluded that a contract did not clearly or unequivocally disclaim reliance because "the term 'rely' does not appear in any form, either in terms of relying on the other party's representations, or in relying solely on one's own judgment." *Id.* at 336.  Since the Texas Supreme Court's decision in *Italian Cowboy Partners, Ltd.*, courts have closely followed its analysis looking meticulously at the words used in the underlying contract.  *LHC Nashua P'ship, Ltd. v. PDNED Sagamore Nashua, L.L.C.*, 659 F.3d 450, 460 (5th Cir. 2011) (concluding that the standard merger clause without the word "rely" does not expressly disclaim reliance on prior representations or expressly waive fraud claims); *DT Apartment Grp., LP v. CWCapital, LLC*, No. 3:12-CV-0437-D, 2013 WL 2317061, at *10 (N.D. Tex. May 28, 2013) (Fitzwater, Chief J.) (concluding that "any statement or representation to [DT Apartment] regarding any fact relied upon in entering this Agreement" disclaimed reliance on any statements, precluding a fraudulent inducement because the word rely distinguished this clause from a standard merger clause like the one in *Italian Cowboy Partners, Ltd.*, 341 S.W.3d at 336).

---

[4] Texas contract law applies.  *See* Exhibit J (§ 15.1).

Here, neither section 7.3 nor section 14.1 -- nor anywhere else in the Purchase Agreements -- include the term rely or any synonym thereof. Courts have held that similar provisions to the merger clause in section 14.1 are not sufficient to foreclose a plaintiff's claim for fraud or fraudulent inducement. *Italian Cowboy Partners, Ltd.*, 341 S.W.3d at 336; *LHC Nashua P'ship, Ltd.*, 659 F.3d at 460. Therefore, this Court concludes that sections 7.3 and 14.1 do not clearly and unequivocally disclaim reliance, distinguishing this case from cases interpreting contracts with reliance disclaimers in *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997), and *DT Apartment Grp., LP*, 2013 WL 2317061, at *10.

## B. Murex States a Claim for Fraudulent Inducement

The Court next considers Murex's cause of action for fraud and fraudulent inducement against GRC. Murex alleges that Schnabel and GRC made the following misrepresentations that either constitute fraud and/or fraudulently induced Murex to enter into the 52 Purchase Agreements: (1) Schnabel verbally informed Murex that GRC took possession of the producers' biodiesel, separated the K-1 RINs from the biodiesel, making them K-2 RINs, redistributed them into the secondary market and re-sold the biodiesel to GRC's customers along the east coast, (2) Schnabel substantiated his misrepresentation about taking possession and redistributing the biodiesel by sending a bill of lading, and (3) Schnabel and GRC represented that he would provide Murex with D4 RINs orally, in writing, in invoices, and on EMTS. Am. Complaint ¶ 113(a)-(i). Murex claims that these representations were material because but for them, Murex would not have initially purchased or continued to purchase the NEF and Chieftain RINs from GRC. *Id.* ¶ 60. In its Motion to Dismiss, GRC contends that Murex has failed to state a claim for fraud or fraudulently inducement for several reasons. *See* Motion at 13-24.

The elements of fraud are:

> (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*Italian Cowboy Partners, Ltd.*, 341 S.W.3d at 337; *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (per curiam).   A plaintiff claiming fraudulent inducement must also allege that, as a result, it has been fraudulently induced into a binding agreement.  *In re Guardianship of Patlan*, 350 S.W.3d 189, 198 (Tex. App.--San Antonio 2011, no pet. h.).

"State law fraud claims are subject to the heightened pleading requirements of Rule 9(b)." *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550-51 (5th Cir. 2001); FED. R. CIV. P. 9(b).  The Fifth Circuit "interprets Rule 9(b) strictly, requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Herrmann Holdings Ltd. v. Lucent Techs., Inc.*, 302 F.3d 552, 564-65 (5th Cir. 2002) (citations and internal quotations omitted).  In other words, "Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010) (quoting *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)).

GRC maintains that the third category of misrepresentations listed above (every time GRC represented the NEF or Chieftain RINs as D4 RINs) cannot support Murex's claim for fraud or fraudulent inducement against GRC because GRC passed on the representation that originated with someone else. Motion at 15-16, 19-20.  The Court agrees.  Mere publication of false representations

is not sufficient to give rise to a claim of fraud. *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 432 (5th Cir. 2002). In order to rely on these misrepresentations -- indisputably originating with the producers in accordance with the regulatory scheme, and/or other independent parties -- Murex must plausibly allege that GRC "intended to disseminate fraudulent statements or . . . knew at the time . . . that the product could be defective." *Ryan v. Brookdale Int'l Sys. Inc.*, Civ. A. No. H-06-01819, 2008 WL 2405970, at *4 (S.D. Tex. June 11, 2008) (citing *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)). Murex has failed to allege any facts from which the Court could plausibly infer that GRC knew the NEF and Chieftain D4 RINs were false. Instead, the amended complaint leads to the competing plausible inference that GRC was duped by NEF and Chieftain just like Murex, the EPA, and many others. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). Therefore, the Court does not take any of these misrepresentations into consideration in its determination that Murex has adequately alleged a claim for fraud and fraudulent inducement.

Murex's allegations relating to Schnabel's statements regarding GRC's business model, however, are allegedly misrepresentations made by the GRC Defendants. Nonetheless, the GRC Defendants contend that these representations were not false because GRC was taking legal possession of the fuel as "consignee" and Murex does not allege that GRC represented that it was taking physical possession of the fuel. Motion at 2, 15. Contrary to facts underlying GRC's savvy argument about the ambiguity of the word possession, Murex alleged that GRC said that it took possession of the biodiesel, separated the RINs from the biodiesel, and distributed the biodiesel to customers. The statements when viewed together lead to plausible inference that Schnabel misrepresented that GRC had physical possession of the biodiesel at some point during the

- 10 -

transaction.  Further supporting this plausible inference, as Murex avers, the federal regulation governing GRC's business model prohibited it from receiving unseparated RINs without also receiving "an appropriate volume of renewable fuel . . . on the same day."  Response at 5 (quoting 40 C.F.R. § 80.1460(b)(4) (2010)).

Murex has adequately alleged that Schnabel's misrepresentations regarding GRC's possession, separation and re-distribution of the biodiesel were false when made.  Murex cites to Felon Defendants' plea agreements whose description of their fraudulent actions contradict Schnabel's representations as to GRC's business model.  *See* Response at 15 (citing Exhibits A-C to Am. Compl.).  In response, GRC contends that Murex could not have justifiably relied on these representations because they contradict the purchase agreements' unambiguous terms.  GRC Defendants' Reply in Support of Their Motion to Dismiss ("Reply") at 1-2 (doc. 51).  Specifically, GRC cites the merger clause addressed above and the description of the RINs in the purchase agreement.  *Id.*  In support of this argument, GRC cites a case in which the Court concluded that the plaintiff unjustifiably relied on an oral representation that the terms of agreement were exclusive, when the underlying written contract unambiguously stated that the terms of agreement were non-exclusive.  *Id.* (citing *DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.*, 112 S.W.3d 854, 858 (Tex. App.--Houston [14th Dist.] 2003)).  The representations here are clearly distinguishable.  The alleged misrepresentations regarding GRC's business model went beyond the Purchase Agreement and do not relate to any provision or term in the purchase agreement whereas the contradiction in *DRC Parts & Accessories, L.L.C.*, 112 S.W.3d at 858, was a direct contradiction -- the two words are antonyms.  Since the Court concluded above that the parties did not unequivocally disclaim reliance and Schnabel's alleged misrepresentations about GRC's business model -- not the subject of the

- 11 -

underlying contract -- do not directly contradict an unambiguous term in the purchase agreement, the Court cannot conclude as a matter of law that Murex unjustifiably relied on Schnabel's representations.

FED. R. CIV. P. 9(b) provides that "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Plaintiffs may satisfy the scienter requirement by allegations of intentional misconduct or of severe recklessness, which "resembles a slightly lesser species of intentional misconduct." *In re Key Energy Servs., Inc. Sec. Litig.*, No. 4:14-CV-2368, 2016 WL 1305922, at *6 (S.D. Tex. Mar. 31, 2016) (quoting *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 408-09 (5th Cir. 2001)). Circumstantial evidence of such conscious behavior or severe recklessness is sufficient to support a strong inference of scienter. *Nathenson*, 267 F.3d at 410; *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 643 (5th Cir. 2005) ("Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from standards of ordinary care."). The Court concludes that Murex has pled facts sufficient to show that the GRC Defendants acted with severe reckless disregard to the veracity of their statements.

Murex maintains that the GRC Defendants' fraudulent intent is demonstrated by, among other reasons, (1) the GRC Defendants' motive to secure a greater profit, (2) Schnabel knew his misrepresentations regarding the receipt, separation, redistribution of biodiesel were false at the time or at minimum recklessly made, (3) the GRC's Defendants' recommendation that Murex switch to Chieftain out of hundreds of producers after Murex stopped purchasing NEF fuel, (4) Schnabel knew or should have known that NEF and Chieftain were owned by the same parties, and (5) the Felon Defendants' admissions in their plea agreements. Am. Compl. ¶ 118(a)-(f).

- 12 -

The GRC Defendants' argue that Murex cannot rely on its motive to secure a profit to show fraudulent intent. Reply at 7-8. The GRC Defendants are correct that general allegations of a profit motive are insufficient to allege scienter. *Mortensen v. AmeriCredit Corp.*, 123 F. Supp. 2d 1018, 1023 (N.D. Tex.) (Fitzwater, J.), *affirmed*, 240 F.3d 1073 (5th Cir. 2000). Here, however, Murex contends that GRC had a motive to sell the fraudulent biodiesel RINs generated by NEF and Chieftain because it could secure a larger profit per sale due to the fact that the underlying fuel was bunker fuel or grease. Response at 14-15. While this distinction is minor, it provides more detail than the average general allegation of a profit. *Tel-Phonic Services, Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992). Nonetheless, the Court does not need to hold that the GRC Defendants' alleged motive to maximize its profit is sufficient to plead fraudulent intent standing alone. *In re Key Energy Servs., Inc. Sec. Litig.*, 2016 WL 1305922, at *6 ("In evaluating whether pleaded facts give rise to a strong" inference of scienter the court "must assess all the allegations holistically.") (internal quotations omitted).

In combination with the alleged motive, Murex alleges sufficient facts of the GRC Defendants' conscious behavior for the Court to plausibly infer that Schnabel and the GRC Defendants at least made statements with reckless disregard for the truth. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) ("Alleged facts are sufficient to support such an inference if they" ... "identify circumstances that indicate conscious behavior on the part of the defendant."). First, Schnabel's statements regarding GRC's business model were plausibly recklessly made. *Johnson & Higgins, Inc. v. Kenneco Energy*, 962 S.W.2d 507, 526-27 (Tex. 1998) ("[A] representation is recklessly made if the speaker knows that he does not have sufficient information or basis to support it, . . . or if he realizes that he does not know whether or not the statement is true."). Under Texas

law, recklessness can be inferred by the speaker's contemporaneous possession of information contradicting his representations. *Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183, 186 (Tex. 1977). Here, the GRC Defendants' recklessness as to the Felon Defendant RINs' validity is evidenced by Schnabel telling Murex that GRC was redistributing the Felon Defendants' fuel when he knew, as evidenced by the Plea Agreements, that GRC was not actually redistributing any biodiesel. Am. Compl. ¶ 118(c); Exhibits A-C to the Am. Compl. When Schnabel's alleged misrepresentations are compared with the Felon Defendants' admissions in the plea agreement, the GRC Defendants are possibly stuck in a Catch-22 situation where Schnabel's comments are either false, or Schnabel and GRC are possibly the unidentified co-conspirators identified in the plea agreements.[5] It's possible Schnabel never made those statements, or that he did not aver what Murex claims he did, and that Schnabel and GRC are victims in the Felon Defendants' fraud too. Under the Rule 12(b)(6) standard, however, the Court is required to take Murex's well-pleaded factual allegations as true. *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205.

Next, Schnabel's affirmative recommendation of Chieftain to Murex after Murex decided to stop purchasing NEF-generated RINs supports the court's plausible inference that the GRC Defendants' committed fraud or fraudulently induced Murex into entering the purchase agreements. *S.E.C. v. Gann*, No. 3:05-CV-0063-L, 2006 WL 616005, at *5 (N.D. Tex. Mar. 13, 2006) (Lindsay, J.) (pleading specific communications from which the court inferred scienter from the defendants'

---

[5] The Court does not contradict its conclusion in Sections E, F, and G in this statement. Murex failed to adequately allege that the GRC Defendants conspired with the Felon Defendants or operated within an enterprise in fact with them. The Court merely states that this situation is possible, which is below the requisite standard for Murex to state a claim under Rule 12(b)(6). Further, Murex does not allege that Schnabel and GRC are the unidentified conspirators in the plea agreements, but reserves the right to allege upon further discovery. *See* Am. Compl. n.17.

conscious behavior).  This fact standing alone would not necessarily support a plausible inference of intent, but this fact coupled with all of Murex's allegations increases the suspicion that the GRC Defendants' conscious behavior leads to the plausible inference of fraud.  *In re Key Energy Servs., Inc. Sec. Litig.*, 2016 WL 1305922, at *6.

Murex adequately states the who (Schnabel), what (GRC's business model statements), when (July 2011), where (phone conversation between entities in New York and Plano), and how (selling Felon Defendants' fraudulent RINs to consumers) of the GRC Defendants' alleged fraud.  *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997). Murex's claim is one for common law fraud, which is a lower standard than the cases analyzing securities fraud.  *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 213 (5th Cir. 2009) ("It is true that common law fraud claims are not subject to the heightened strong inference of scienter standard imposed by the PSLRA.").  Further, Murex's amended complaint is not a bare bone complaint with conclusory allegations, but is a sixty page complaint that pleads detailed factual allegations -- that this Court must take as true -- that lead to the plausible inference that the GRC Defendants committed fraud and/or fraudulently induced Murex.[6]  *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 265 (5th Cir. 2009); *Ashcroft v. Iqbal*, 556 U.S. 662, 686-87 (2009) ("[A] rigid rule requiring the detailed pleading of a condition of mind would be undesirable . . . .") (internal quotation omitted).    Further, Murex has adequately alleged that Schnabel's misrepresentations regarding the GRC Defendants induced it to enter the 52 purchase agreements because it averred the significance of purchasing RINs from a secondary market seller that had

---

[6] GRC does not contest whether Murex was injured by the alleged fraud or fraudulent inducement.

- 15 -

possession of the fuel at some point during the transaction.  Am. Compl. ¶ 60; *Samson Lone Star Ltd. P'ship v. Hooks*, No. 01-09-00328-CV, 2016 WL 1019217, at *8 (Tex. App.--Houston [1st Dist.] Mar. 15, 2016) (concluding that misrepresentation was material where the information was "highly relevant" to the appellees' decision).

While it is possible the GRC Defendants' are victims of the Felon Defendants as well, the Court concludes that Murex has adequately alleged sufficient well-pleaded facts to support it claim that there is a plausible inference it has a fraud and fraudulent inducement claim against the GRC Defendants.

### C.   Murex Fails to State a Claim for Fraud by Nondisclosure

Murex alleges that the GRC Defendants concealed and failed to disclose certain material facts to Murex -- fraud by nondisclosure.  Am. Compl. ¶¶ 129-141.  The GRC Defendants contend that Murex has failed to state a claim for fraud by nondisclosure because no duty to speak existed. Motion at 22-24.  In response, Murex maintains that the GRC Defendants had a duty to disclose the whole truth when they voluntarily disclosed some information regarding the RINs' validity.  Response at 20-22.

A duty to speak can arise by operation of law or by agreement of the parties.  *Union Pac. Res. Grp., Inc. v. Rhone-Poulenc, Inc.*, 247 F.3d 574, 586 (5th Cir. 2001).  A duty to speak arises by operation of law when "one party voluntarily discloses some but less than all material facts, so that he must disclose the whole truth." *Id.*; *Rivers v. Charlie Thomas Ford, Ltd.*, 289 SW3d 353, 359 (Tex. App.--Houston [14th Dist.] 2009, no pet. h.).  Murex claims that the GRC Defendants had a duty to disclose the whole truth because the GRC Defendants made representations, forwarded documents, and made digital entries regarding the validity of the NEF and Chieftain generated RINs.

Response at 20-22. Further Murex claims that Schnabel made representations to Murex regarding GRC's business model -- taking the biodiesel into its possession and redistributing it, without disclosing the whole truth regarding its business model. *Id.* at 21-22. Regarding the misrepresentations regarding GRC's business model, the allegations sound in affirmative misrepresentation, which this Court concluded Murex has sufficiently alleged, not fraud by non-disclosure.

Regarding the validity of the RINs, Murex does not allege facts that could lead the Court to plausibly infer that the GRC Defendants were in possession of additional information that would have disclosed the whole truth to Murex. The representations that the underlying validity of the RINs originated from the Felon Defendants and third parties, not the GRC Defendants. Am. Compl. ¶ 46. Murex merely lists the alleged misrepresentations in its effort to persuade the Court that the GRC Defendants only disclosed some of the information in its possession. Response at 21; *cf. Union Pac. Res. Grp., Inc.*, 247 F.3d at 586. With regards to nondisclosure, it is equally as likely that Murex had equal opportunity as the GRC Defendants to discover the invalidity of the RINs due to the arms-length business relationships between the entities. *Blankinship v. Brown*, 399 S.W.3d 303, 308 (Tex. App.--Dallas 2013, pet. denied); *Springs Window Fashions Div., Inc. v. Blind Maker, Inc.*, 184 S.W.3d 840, 881 (Tex. App.--Austin 2006). Therefore, Murex has failed to adequately allege that the GRC Defendants had a duty to speak, and as a result, Murex has failed to adequately state a claim of relief for fraud by nondisclosure.

### D. Murex States a Claim for Negligent Misrepresentation

Murex alleges that the GRC Defendants' conduct constituted negligent misrepresentation to Murex through oral and written representations between August 2011 and March 2012. Am.

- 17 -

Compl. ¶¶ 142-149.  In their Motion to Dismiss, the GRC Defendants contend that Murex fails to state a claim for negligent misrepresentation because its claim is foreclosed by the economic loss rule and by the independent injury rule.  Motion at 25-26 (citing *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663 (Tex. 1998) (concluding "[w]ithout deciding whether [defendant] breached a legal duty independent of its contractual duties . . . that [plaintiff's] negligent misrepresentation claim must fail for lack of any independent injury."); *Greco v. Jones*, 38 F. Supp. 3d 790, 798-99 & n.5 (N.D. Tex. 2014) (Lynn, J.) (dismissing negligent misrepresentation claims for lack of independent injury)).

Since the independent injury rule applies to negligent misrepresentation claims under Texas tort law, Murex must adequately allege an injury that can be remedied by the negligent misrepresentation claim and could not be remedied under a breach of contract claim.  *Sterling Chems., Inc. v. Texaco Inc.*, 259 S.W.3d 793, 800 (Tex. App. --Houston [1st Dist.] 2007, pet. denied).  Murex claims that as a result of the GRC Defendants' negligent misrepresentation that it suffered "substantial pecuniary and out-of-pocket loss."  Am. Compl. ¶ 149.  Specifically, in its response in opposition to the GRC Defendants' Motion to Dismiss, Murex avers that it has pled damages separate and apart from those recoverable under its breach of contract claim, out of pocket losses, replacing its buyers' RINs and defending against claims from its buyers.  Response at 22-23.  In their reply, the GRC Defendants maintain that these damages consist only of the economic loss of a contractual expectancy and fall under the category of consequential losses, damages explicitly recognized under Texas contract law.  Reply at 9.

The GRC Defendants correctly define Murex's alleged damages as consequential losses, and correctly avers that consequential losses are recoverable through a breach of contract claim.  *El Paso*

- 18 -

*Mktg., L.P. v. Wolf Hollow I, L.P.*, 383 S.W.3d 138, 144 (Tex. 2012). That is, however, not the end of the court's inquiry. The Court must ascertain whether the alleged consequential damages are a proximate cause of a breach of the purchase agreements -- the benefit of the bargain, or a result of the alleged misrepresentations. *Lexington Ins. Co. v. Covest, Ltd.*, No. 01-94-00553-CV, 1996 WL 169855, at *8 (Tex. App.--Houston [1st Dist.] Apr. 11, 1996); *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718-19 (Tex. 2014) ("[A] party states a tort claim when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit."). The Court concludes that the damages Murex pled in relation to replacing the RINs are likely considered consequential damages resulting from the GRC Defendants' alleged breach of the purchase agreements. *Paul Mueller Co. v. Alcon Labs., Inc.*, 993 S.W.2d 851, 856 (Tex. App.--Fort Worth 1999, no pet. h.) (concluding that replacement costs are recoverable for a breach of contract claim); *El Paso Mktg., L.P.*, 383 S.W.3d at 144 (same).

The cost Murex has sustained in defending against its buyers' claims against it for the invalid RINs, however, are more plausibly considered damages resulting from the negligent misrepresentation. *Oat Note, Inc. v. Ampro Equities, Inc.*, 141 S.W.3d 274, 280 (Tex. App.--Austin 2004, no pet. h.) ("The negligent misrepresentation harmed Ampro because it led to the filing of a lawsuit against it, not because it resulted in Ampro's getting less than it expected to be the benefit of its bargain in the real estate deal. Accordingly, Oat Note's actions were the legal cause of the harm, and so the damages meet the requirement that they stem from an injury independent of the relative benefit of the bargain itself.").

Attorneys' fees are sometimes considered consequential damages under a claim for breach of contract. *Med. City Dallas, Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 63 (Tex. 2008). The damages

here, however, are attorneys' fees and litigation costs expended on lawsuits not between the parties to contract, but one party to the contract and third parties.  Response at 22-23.  At the motion to dismiss stage, several courts have concluded that damages similar to the cost of defending against third party lawsuits are independent injuries above any benefit-of-the-bargain damages.  *TIB--The Indep. BankersBank v. Canyon Cmty. Bank*, 13 F. Supp. 3d 661, 670 (N.D. Tex. 2014) (Fitzwater, Chief, J.) (denying motion to dismiss negligent misrepresentation claim when plaintiff sought "to recover out-of-pocket expenses incurred in connection with having to repurchase the Loan from Fannie Mae"); *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 763 (N.D. Tex. 2012) (Lynn, J.); *CCE, Inc. v. PBS & J Const. Servs., Inc.*, 461 S.W.3d 542, 551 (Tex. App.--Houston [1st Dist.] 2011, pet. denied) (contractor paid to hire subcontractor to complete road project, which was an expense over and above what it would have cost contractor to complete road project and did not represent damages for the benefit of the bargain as measured by lost sales or profits).

Murex has sufficiently alleged an injury independent from the economic loss to the subject matter of the purchase agreement.  Am. Compl. ¶ 149; Response at 22-23.  The GRC Defendants only other argument that Murex's negligent misrepresentation should be dismissed relates to the same arguments the Court considered in relation to Murex's claim for fraud and fraudulent inducement.  Motion at 25-26.  Therefore, the Court denies the GRC Defendants' Motion to Dismiss Murex's negligent misrepresentation claim.

### E. Murex Fails to State a Claim for Conspiracy

Murex alleges a conspiracy to commit fraud claim against all defendants.  Am. Compl. ¶ 150-57.  The GRC Defendants move to dismiss Murex's claim for conspiracy as to them contending that Murex fails to plausibly allege the existence of an actual conspiracy between the Felon Defendants

and the GRC Defendants.  Motion at 26-27.  Specifically, the GRC Defendants aver that Murex has failed to assert any factual allegations of any agreement among the GRC Defendants and the Felon Defendants.  *Id.*  In response, Murex maintains that the GRC's Defendants' alleged misrepresentations, Schnabel's allegedly fraudulent description of GRC's business model of taking possession of the underlying biodiesel and redistributing it, Schnabel's recommendation of Chieftain, and that GRC provided information from the Felon Defendants to Murex lead to the plausible inference of a conspiracy.  Response at 23-24.

To establish a conspiracy to defraud, the plaintiff must prove both an underlying fraud and a civil conspiracy.  See *Conger v. Danek Med., Inc.*, 27 F. Supp. 2d 717, 721-22 (N.D. Tex. 1998) (McBryde, J.) (citing *American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 438 (Tex. 1997)); see also *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996) (civil conspiracy is a "derivative tort," meaning that "a defendant's liability for conspiracy depends on participation in some underlying tort"). Furthermore, civil conspiracy requires specific intent; the parties must be aware of the wrongful nature of their conduct when they form their plan to act. *Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995).  "The 'meeting of the minds' element requires proof of intent to participate in the purpose of the conspiracy."  *Chevalier v. Animal Rehab. Ctr., Inc.*, 839 F. Supp. 1224, 1230 (N.D. Tex. 1993) (Kendall, J.) (citing *Times Herald Printing Co. v. A.H. Belo Corp.*, 820 S.W.2d 206, 216 (Tex. App.--Houston [14th Dist.] 1991, no writ.)); *Lynch v. Cannatella*, 810 F.2d 1363, 1370 (5th Cir. 1987) (dismissing conspiracy claim "in the absence of factual allegations from which a conspiracy . . . can reasonably be inferred").

Murex "fails to specify . . . precisely what the interaction was or what actions were decided upon, or when any meeting of the minds occurred between those parties or provide factual

background to allow an understanding of how [GRC and the Felon Defendants reached an agreement that] is equivalent to a conspiracy to defraud." *Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d. 785, 794 (N.D. Tex. 2009) (Boyle, J.).  Each of Murex's factual allegations provide details of independent actions taken by the GRC Defendants.  Am. Compl. ¶ 150-57.  None of the factual allegations relate to the GRC Defendants and the Felon Defendants acting in concert together, reaching an agreement to defraud, or any situations where they could have a meeting of the minds. *Id.*  Murex's only allegation relating to such an agreement is a conclusory allegation with no factual support.  *Id.* ¶ 152.  Murex's factual allegations lead to the equal inference of independent commercial actors doing business together through an arms-length relationship.  *Berry*, 608 F. Supp. 2d. at 795.  Murex does not adequately allege a plausible inference that there was a meeting of the minds or agreement between the Felon Defendants and the GRC Defendants.  *See also Priester v. Lowndes Cty.*, 354 F.3d 414, 420 (5th Cir.), *cert. denied*, 543 U.S. 829 (2004); *Love Terminal Partners, LP v. City of Dall.*, 527 F. Supp. 2d 538, 554 (N.D. Tex. 2007) (Fitzwater, J.).  Therefore, Murex's conspiracy to commit fraud claim asserted against the GRC Defendant fails.  The GRC Defendants' Motion to Dismiss Murex's conspiracy to commit fraud claim as to them is granted.

### F.  Murex Fails to State a Claim for Aiding and Abetting Fraud

Murex alleges a claim against the GRC Defendants for aiding and abetting fraud.  Am. Compl. ¶¶ 158-62.  The GRC Defendants contend that this claim should be dismissed for three reasons:  (1) the Texas Supreme Court has not recognized a cause of action for aiding and abetting fraud separate and apart from a conspiracy claim, (2) Murex has failed to adequately allege facts giving rise to a plausible inference that GRC had actual knowledge that NEF and Chieftain were generating invalid RINs, and (3) Murex has failed to adequately allege that the GRC Defendants

intended to assist and substantially assisted the Felon Defendants. Motion at 28-29. In response, Murex maintains that Texas recognizes the claim for aiding and abetting as a theory for imposing joint liability, and that it has adequately alleged facts sufficient to support a plausible inference of the claims for aiding and abetting. Response at 25-26.

Texas has not recognized "a cause of action for 'aiding and abetting' fraud separate and apart from a conspiracy claim." *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 583 n.7 (Tex. 2001); *LandAmerica Commonw. Title Co. v. Wido*, No. 05-14-00036-CV, 2015 WL 6545685, at *10 n.1 (Tex. App.--Dallas Oct. 29, 2015). Murex fails to cite any authority that expressly recognizes an aiding and abetting fraud claim. *See* Response at 25-26. Murex only cites to cases that recognize, generally, a claim for aiding and abetting as a theory for imposing joint liability in tort. *Id.* The Texas Supreme Court has not expressly recognized -- nor is the Court aware of any lower Texas court that has recognized -- the claim Murex asserts here. Therefore, this Court will not accept Murex's invitation to be the first court to recognize a cause of action for aiding and abetting fraud apart from a claim for civil conspiracy. See *Ernst & Young, L.L.P.*, 51 S.W.3d at 583 n.7. Therefore, the Court grants the GRC Defendants' Motion to Dismiss Murex's claim against the GRC Defendants for aiding and abetting fraud.

### G. Murex Fails to State a RICO Claim against Schnabel and GRC

Murex asserts claims against Schnabel and GRC for civil violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") under 18 U.S.C. 1962(c). Am. Compl. ¶¶ 163-76, 187-97. The GRC Defendants assert that Murex's RICO claims against them fail for three reasons: (1) it has failed to plausibly allege a pattern of racketeering activity, (2) it has failed to

plausibly allege the essential element of an enterprise, and (3) it has failed to plausibly allege the structural elements necessary to plead an association-in-fact enterprise. Motion at 29-33.

"Reduced to its three essentials, a civil RICO claim must involve: (1) a person who engages in (2) a pattern of racketeering activity; (3) connected to the acquisition, establishment, conduct, or control of an enterprise." See *Calcasieu Marine Nat'l Bank v. Grant*, 943 F.2d 1453, 1461 (5th Cir. 1991) (citing 18 U.S.C. § 1962(a)-(d) (emphasis omitted)). An "association in fact" enterprise, as alleged in Counts 7 and 9 (Am. Compl. ¶¶ 165, 189), "must have an ongoing organization or be a continuing unit, such that the enterprise has an existence that can be defined apart from the commission or the predicate acts." *Zastrow v. Hous. Auto Imprts. Greenway Ltd.*, 789 F.3d 553, 562 (5th Cir. 2015). "The enterprise is not a pattern or racketeering activity, but must exist separate and apart from the pattern of racketeering activity in which it engages." *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003); see also *Atkinson v. Anadarko Bank & Trust Co.*, 808 F.2d 438, 441 (5th Cir.) ("The enterprise must be 'an entity separate and apart from the pattern of activity in which it engages.'") (quoting *U.S. v. Turkette*, 452 U.S. 576, 583 (1981)), *cert. denied*, 483 U.S. 1032 (1987).

To support its contention that an association in fact enterprise existed between GRC and/or Schnabel and the Felon Defendants, Murex contends that: (1) the GRC Defendants caused the association in fact enterprise to facilitate the sale of NEF bunker fuel and Chieftain filtered grease to willing purchaser, (2) engaged in ongoing, repetitive behavior aimed at defrauding Murex and other, as of yet-unknown, victims, and (3) the GRC Defendants and the Felon Defendants "collaborated together from the common purpose of . . . transferring invalid RINs into the market."

Response at 26-28.  Murex maintains that courts have concluded that similar allegations are sufficient to allege an association in fact.  *Id.*

Each of the three allegations above are conclusory allegations with no factual basis for support.  Just as Murex failed to allege any agreement or meeting of the minds in relation to its conspiracy claim, Murex fails to allege any facts support a plausible inference of coordination, collaboration or association between the GRC Defendants and the Felon Defendants.  *See* Am. Compl. ¶¶ 163-76, 187-97.  Further, the case Murex cites in support of its claim is distinguishable from the case at bar because there were additional indicia of coordination or association.  *Commercial Metals Co. v. Chazanow*, No. 3:09-CV-0808-B, 2009 WL 3853704, at *9 (N.D. Tex. Nov. 17, 2009) (Boyle, J.) (concluding that allegations of collaboration plus the defendants relation through common ownership of the alleged enterprise satisfied the structural elements requirement for an association-in-fact enterprise).  Conclusory allegations of collaboration fail support a plausible inference of the structural requirement necessary to support an association in fact enterprise under a RICO claim.  *Boyle v. United States*, 556 U.S. 938, 946-47 (2009).  An association in fact enterprise is a required element to a RICO claim.  *Id.*  Murex does not allege any enterprise separate and apart of the alleged racketeering activity itself.  *Zastrow*, 789 F.3d at 562 (Because the alleged enterprise is one "created by the alleged racketeering activity itself," it is "obviously not sufficient . . . ."); *Atkinson*, 808 F.2d at 441 (RICO claim failed where no evidence that alleged enterprise members "were associated in any manner apart from the activities of the bank," and "the mailing of [allegedly false] loan statements was an activity of the bank.").  Since Murex fails to adequately allege a plausible inference of an association in fact enterprise, its RICO claims against GRC must fail.

Furthermore, Murex asserts a RICO claim against Schnabel, *see* Am. Compl. ¶ 163-76, yet it does not respond to the GRC Defendants' contentions as to why its claim fails. *See* Response at 26-28; Reply at 10 n.12. Regardless, Murex's RICO claim against Schnabel fails for multiple reasons, but specifically, for RICO purposes, the "person" must be distinct from the alleged RICO enterprise. *ISystems v. Spark Networks, Ltd.*, 428 F. App'x 368, 373 (5th Cir. 2011) ("[T]he distinctiveness requirement may not be avoided by alleging a RICO enterprise that consists merely of a corporation defendant associated with its own employees or agents carrying on the regular affairs of the defendants.") (discussing *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163-65 (2001)), *overturned on other grounds*, 2012 WL 3115964 (5th Cir. Mar. 21, 2012). Yet Murex attempts to assert its RICO claim against Schnabel by alleging that Schnabel is the RICO person and GRC is the RICO defendant, Am. Compl. ¶¶164-65, which it cannot do without factual allegations that Schnabel "did anything beyond carrying out the regular business" of GRC -- which it does not do. *ISystems*, 428 F. App'x at 373. Thus, Murex's RICO claim against Schnabel must fail.

Therefore, the GRC Defendants' Motion to Dismiss Murex's RICO claims is granted.

### H. Murex Fails to State a Claim for Breach of Oral Contract in the Alternative

In the alternative to its fraud claim, Murex alleges that GRC breached approximately 52 oral contracts for the purchase of D4 RINs by not tendering D4 RINs to Murex. Am. Compl. ¶¶ 198-204. Since Murex pleads this claim in the alternative, this claim is only relevant if the Court concludes that the GRC Defendants did not commit fraud or did not fraudulently induce Murex into entering the purchase agreements. *Low v. Henry*, 221 S.W.3d 609, 615 (Tex. 2007) (discussing claims in the alternative). If the GRC Defendants did not commit fraud or did not fraudulently

induce Murex, the purchase agreements are valid contracts.  If the purchase agreements are valid

contracts, section 14.1 is a valid merger clause.  *Dittmann v. D.B. Zwirn & Co., L.P.*, No. Civ. A. H-

09-402, 2010 WL 519692, at *6 (S.D. Tex. Feb. 8, 2010).  Any claim for breach of an alleged oral

contract is barred by the merger clause in the purchase agreement.  *Grp. Dealer Servs., Inc. v. Sw. Bell

Mobile Sys., Inc.*, No. SA-00-CA-03181-OG, 2001 WL 1910565, at *8 n.70 (W.D. Tex. Sept. 19,

2001); *Gordon v. SouthTrust Bank*, 108 F. App'x 837, 842 (5th Cir. 2004) (discussing how a similar

merger clause forecloses a claim for breach of oral contract).  Therefore, Murex cannot state a claim

for breach of oral contract in the alternative to its fraud claim because the merger clause forecloses

such a claim.  GRC's Motion to Dismiss Murex's alternative claim for breach of oral contract is

granted.

## I.   <u>Murex Fails to State a Claim for Breach of<br>Written Contract in the Alternative</u>

In the alternative to its fraud claim, Murex alleges that GRC breached approximately 52

purchase agreements by not tendering D4 RINs to Murex.  Am. Compl. ¶¶ 205-210.  GRC contends

that Murex fails to allege a claim for breach of contract because Murex surrendered its right to assert

a breach of contract claim due to the release provision, section 7.3, of the purchase agreements.

Motion at 34.  The provision states in relevant part:

> [E]ach party relinquishes and releases all claims against the other for
> the prospective profits, incidental or consequential damages, whether
> or not based upon . . . any [] cause of action based upon defect in the
> product . . . .   All claims for any cause, including alleged defective
> goods . . . shall be made within fifteen days after buyer learns of the
> alleged defect . . . and in all cases shall be deemed waived unless made
> in writing within [30] days of Buyer's receipt of the goods.

Exhibit J, § 7.3.  It is well-established that "[u]nder Texas law, 'a release surrenders legal rights or obligation between the parties to an agreement'" *Sterling Equities, Inc. v. Chubb Custom Ins. Co.*, 806 F. Supp. 2d 1004, 1008 (S.D. Tex. 2011) (quoting *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993)).  There are, however, exceptions that prevent parties from agreeing to certain releases.  Murex claims that TEX. CIV. PRAC. & REM. CODE § 16.070(a) prohibits it from entering an agreement that purports to limit the statute of limitations shorter than two years, § 16.070(a), and § 16.071(a) renders void any stipulation that requires notification within less than 90 days.  The clause "[a]ll claims for any cause, including alleged defective goods . . . shall be made within fifteen days after buyer learns of the alleged defect" purports to, *i.e.*, claims to, shorten the statute of limitations to less than two years.  The GRC Defendants contend that this limitation is valid because Murex brought its claims within both the limitation of 7.3 and a two year statute of limitation, so the limitation did not shorten the statute of limitation.  Reply at 11-12. The fact that in this instance the limitation did not shorten the statute of limitation is not the relevant inquiry.  The statute clearly prohibits a contract that "purports" to limit the statute of limitations, not whether it does so in all instances.  Therefore, this limitation is void as a violation of § 16.070(a).  *Spicewood Summit Office Condos. Ass'n, Inc. v. Am. First Lloyd's Ins. Co.*, 287 S.W.3d 461, 466 (Tex. App.-- Austin 2009, pet. denied).  Murex is also correct that the limitations in 7.3 requiring notice within less than 90 days void as a violation of § 16.071(a) .

However, an illegal or unconscionable limitation within a contract may generally be severed so long as it does not constitute the essential purpose of the agreement.  See *In re Poly-Am., L.P.*, 262 S.W.3d 337, 360 (Tex. 2008) (citing *Williams v. Williams*, 569 S.W.2d 867, 871 (Tex. 1978). Whether or not the invalidity of a particular provision affects the rest of the contract depends upon

- 28 -

whether the remaining provisions are independent or mutually dependent promises, which courts determine by looking to the language of the contract itself. See *John R. Ray & Sons, Inc. v. Stroman*, 923 S.W.2d 80, 86 (Tex. App.-Houston [14th Dist.] 1996, writ denied) (citing *Hanks v. GAB Bus. Servs., Inc.*, 644 S.W.2d 707, 708 (Tex. 1982)). The relevant inquiry is whether or not parties would have entered into the agreement absent the unenforceable provisions. See *Patrizi v. McAninch*, 153 Tex. 389, 269 S.W.2d 343, 348 (1954); see also *City of Beaumont v. Int'l Ass'n of Firefighters, Local Union No. 399*, 241 S.W.3d 208, 215 (Tex. App.--Beaumont 2007, no pet.) (citing *Rogers v. Wolfson*, 763 S.W.2d 922, 925 (Tex. App.--Dallas 1989, writ denied)). The Texas Supreme Court has previously allowed severance of illegal contract provisions where the invalid provisions were "only a part of the many reciprocal promises in the agreement" and "did not constitute the main or essential purpose of the agreement." *Williams*, 569 S.W.2d at 871.

The Court concludes that the limitations prescribed in section 7.3 are not "the main or essential purpose of the agreement" -- the purchase of RINs is the main purpose of the agreement. *See* Exhibit I to the Am. Compl. These two limitations are independent promises, and do not affect the main purpose of the agreement. The Court concludes that the two voided limitations within section 7.3 are severable from the rest of the contract. Therefore, the remainder of section 7.3 and the rest of the terms and conditions of the purchase agreement remain part of the otherwise valid agreement. Murex does not contend that the first clause in section 7.3 ("[E]ach party relinquishes and releases all claims against the other for the prospective profits, incidental or consequential damages, whether or not based upon . . . any [] cause of action based upon defect in the product."), is void for any reason. This clause in section 7.3 is a valid release provision, absent a finding that Murex was fraudulently induced to enter into the purchase agreements. Since Murex's breach of

contract claim is asserted in the alternative, *i.e.*, a world where the Court concludes that Murex has failed to assert a claim for fraud or fraudulent inducement, Murex's breach of written contract must fail as it released its right to assert such a claim in section 7.3. *Sterling Equities, Inc.*, 806 F. Supp. 2d at 1008 (quoting *Dresser Indus., Inc.*, 853 S.W.2d at 508). The GRC Defendants' Motion to Dismiss Murex's alternative breach of written contract claim is granted.

## J.   Murex States a claim for Unjust Enrichment

The GRC defendants contend that Murex cannot assert a claim for unjust enrichment because an express contract covers the subject matter at issue. Motion at 34-35.

Unjust enrichment "is an independent cause of action that allows recovery when there is no express contract covering the services rendered." *Nart v. Open Text Corp.*, No. A-10-CA-870 LY, 2011 WL 3844216, at *4 (W.D. Tex. Aug. 29, 2011) (citing *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 683-84 (Tex. 2000)). "Nevertheless, 'a party to a contract may seek alternative relief under both contract and quasi-contract theories.'" *Woodcock v. Chase Home Fin., LLC*, Civ. A. No. H-11-1199, 2012 WL 393260, at *3 (S.D. Tex. Feb. 3, 2012) (quoting *In re Kellogg Brown & Root Inc.*, 166 S.W.3d 732, 740 (Tex. 2005)); see also *Tatum v. Tatum*, 606 S.W.2d 31, 33 (Tex. App.-- Corpus Christi 1980, no writ) ("[T]here certainly is nothing to prevent plaintiff from pleading alternative theories of express contract and [unjust enrichment].").

Here, Murex has pled its unjust enrichment claim "[i]n the event the oral agreements, or alternatively the RIN Confirmations, are not considered to be enforceable contracts." Am. Compl. ¶ 212. Murex also adequately alleged a claim for fraud and fraudulent inducement that if proven would result in an invalid contract. See *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006). Therefore, if Murex recovers under its fraud or fraudulent inducement claims, the

underlying purchase agreements would be held invalid, and Murex would not be precluded from seeking an unjust enrichment claim. *Infowise Sols., Inc. v. Microstrategy, Inc.*, No. 3:04-CV-0553-N, 2005 WL 2445436, at *7 n.12 (N.D. Tex. Sept. 29, 2005) (Godbey, J.). The GRC Defendants do not contest the sufficiency of Murex's unjust enrichment claim on any other ground.

Therefore, Murex has adequately pled a claim for unjust enrichment, even though written contracts govern the issue, in the event the contracts are deemed invalid. See *Pension Advisory Grp., Ltd. v. Country Life Ins. Co.*, 771 F. Supp. 2d 680, 704 n.5 (S.D. Tex. 2011) (citing *Tatum*, 606 S.W.2d at 33). The GRC Defendants' Motion to Dismiss Murex's unjust enrichment claim is denied.

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** the Defendants' Motion to Dismiss (doc. 34). As to Murex's claims that (1) GRC and Schnabel fraudulently inducement or committed fraud (Count 1), (2) GRC and Schnabel committed negligent misrepresentation (Count 4), and (3) GRC and Schnabel have been unjustly enriched (Count 12), the Defendants' Motion is **DENIED**. The Court **GRANTS** the Defendants' Motion as to Murex's claims for (1) fraud by nondisclosure (Count 3), (2) conspiracy to commit fraud (Count 5), (3) aiding and abetting fraud (Count 6), (4) civil RICO violations against Schnabel (Count 7), (5) civil RICO violations against GRC (Count 9), (6) breach of oral contract in the alternative (Count 10), and (7) breach of contract (RIN Confirmations) in the alternative (Count 11). The Court notes that its holding here does not affect Murex's claims against the Felon Defendants.

Having dismissed seven counts of the Complaint, the Court now must decide whether to provide Williams with an opportunity to replead her dismissed claims. A "[d]ismissal with prejudice

for failure to state a claim is a decision on the merits [that] essentially ends the plaintiff's lawsuit." *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977). This "drastic remedy" should be used sparingly, because federal policy dictates that cases should be decided "on the basis of the substantive rights involved rather than on technicalities," and as such, plaintiffs must be given an opportunity to state a claim. *Id.*; 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1357 (3d ed. 2004). Here, while it remains unclear whether Murex will be able to come forth with additional facts to overcome the pleading deficiencies stated herein, the Court reserves judgment for now to allow it an opportunity to replead. Though Murex has amended its complaint once before, this is the Court's first opportunity to judge the sufficiency of the pleadings. For these reasons, the Court finds that Murex should be given a chance to re-plead in an attempt to overcome the deficiencies stated herein.

If Murex seeks to file an amended complaint in an effort to overcome the deficiencies warranting dismissal stated in this Order, the Court **ORDERS** it to do so within *thirty (30) days* from the date on which this Order is entered. These re-pleadings shall be accompanied by *a synopsis no longer than ten (10) pages* explaining why the amendments overcome the deficiencies stated herein. If Defendants wish to respond, the Court **ORDERS** them to do so within *fourteen (14) days* of Murex's filing of his amended pleadings, in a responsive brief no longer than *ten (10) pages* in length.

SO ORDERED.

DATED: August 10th, 2016.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

- 32 -